IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALAN EDWARD DORMAN, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 18-1045-RGA |
| CURTIS HARRIS, | : |
| Defendant. | : |

Alan Edward Dorman, Sussex Correctional Institution, Georgetown, Delaware. Pro Se Plaintiff.

Curtis Harris, Dagsboro, Delaware.  Pro Se Defendant.

**MEMORANDUM OPINION**

February 3, 2023
Wilmington, Delaware

ANDREWS, U.S. District Judge:

Plaintiff Alan Edward Dorman, an inmate at the Sussex Correctional Institution ("SCI") in Georgetown, Delaware, filed this action pursuant to 42 U.S.C. § 1983.[1] (D.I. 3). He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5). The matter proceeds on the Second Amended Complaint. (D.I. 24).[2] Before the Court is Defendant Dr. Curtis Harris's motion for summary judgment. (D.I. 55).[3] The matter is fully briefed.

## BACKGROUND AND FACTS PRESENTED BY THE PARTIES

Plaintiff filed this action in July 2018. (D.I. 3). In the Second Amended Complaint, Plaintiff brings one claim—an Eighth Amendment claim against Defendant for deliberate indifference to his medical needs related to a finger injury. (D.I. 24). Plaintiff injured his finger in August or September 2016 while playing basketball at SCI.[4] On September 16, 2016, Plaintiff submitted a sick call request for a swollen finger and was seen by a nurse the same day. (D.I. 26 at 15, 19). He told the nurse that he injured his left middle finger playing basketball two weeks prior, that he had set it back in place, and that swelling had persisted despite icing it. (*Id.* at 15). The Nurse "buddy

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] All other Defendants were dismissed by screening orders issued pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a). (D.I. 8, 28).

[3] Defendant was represented by counsel when he filed his motion for summary judgment, but is now proceeding *pro se*.

[4] Plaintiff has consistently alleged that the injury occurred in mid-August 2016, but his medical records at times suggest it occurred in September 2016.

1

taped" the injured finger to an adjacent finger, ordered Motrin, set up "treatments" to monitor his finger, and placed a referral for an x-ray. (*Id.*).

In November 2016, Defendant began working as the Medical Director of SCI as an employee of Connections Community Support Systems. (D.I. 54-5 at ¶¶ 1-2). Defendant saw Plaintiff for his finger twice; once on November 22, 2016, and once on February 9, 2017. (D.I. 26 at 7, 12). Plaintiff's medical records indicate that between September 16, 2016, when he was initially seen by the nurse, and November 22, 2016, the first time he was seen by Defendant, Plaintiff was seen for his finger at least ten times. (D.I. 26 at 12-16). One of the encounters was on October 18, 2016, with Dr. Herman Ellis, who indicated in his note, "r/o [rule out] fracture of left 3rd finger," and ordered x-rays. (*Id.* at 14). Despite the x-ray referral from the first nurse and several nurses thereafter, x-rays had not at that time been taken. On October 26, 2016, x-rays were taken. (*Id.* at 13). The radiology report following the x-rays, which was prepared by a medical doctor, stated:

> Results: All the carpal joints, metacarpophalangeal joints, proximal and distal interphalangeal joints are well aligned. No fracture or dislocation is seen. No appreciable soft tissue swelling is seen. Conclusion: Normal left hand.

(*Id.* at 16).

On November 22, 2016, at his first encounter with Defendant, Plaintiff stated that his finger was still swollen, deformed, and very sore to touch or move, and that ibuprofen, Mobic, and Tylenol, which he had taken to relieve pain had been ineffective. (*Id.* at 12). Defendant noted that the October x-ray revealed no fracture, dislocation, or soft tissue swelling; his exam found swelling and displacement of the finger due to Plaintiff's inability to flex it. (*Id.*). Defendant further noted that the swelling was mild, but

2

there was no erythema or warmth, and that radial pulse and capillary refill of the finger were both normal. (*Id.*). Defendant diagnosed it as a tendon pull with no evidence of fracture or ischemia, prescribed stronger medication (Tramadol and Naprosyn), referred Plaintiff to physical therapy, and instructed Plaintiff to submit a follow up sick call if there was no improvement. (*Id.*). After the visit, Defendant apparently failed to enter the medical orders for Tramadol and Naprosyn, but did so on November 29, 2016, after it was brought to his attention by a nurse. (*Id.*).

On November 29, 2016, an appointment was made for Plaintiff to begin physical therapy, and he had his physical therapy first session on December 27, 2016. (*Id.* at 11). Thereafter, Plaintiff had physical therapy sessions on December 28, December 30, January 3, January 5, January 6, January 12, January 13, January 19, and February 1, 2017, and continued to take Tramadol and Naprosyn for his pain. (*Id.* at 7-10). Throughout these physical therapy sessions, Plaintiff generally complained of a lack of improvement. (*Id.*).

On February 9, 2017, Defendant saw Plaintiff for his finger injury for the second and final time. There is some confusion in the medical notes from that day. After Plaintiff complained that his "finger just turned purple and [he] could not feel it," he was seen by a nurse who noted that it was his left middle finger (*i.e.*, the same injured finger). (*Id.* at 7). The nurse noted that a different nurse had confirmed Plaintiff's complaint that his finger had turned purple and he could not feel it, but that by the time he got to the infirmary, the color was normal, capillary refill was brisk, and Plaintiff reported that he had regained feeling in the finger. (*Id.*). The physical therapist who was working with Plaintiff then "assessed and manipulated the finger." (*Id.*). The nurse noted also that Defendant agreed to see Plaintiff that day. (*Id.*). Oddly, Defendant's

3

notes from the same day correctly located the issue as being with Plaintiff's left middle finger, but treated it as a unique event, incorrectly stating that the torn tendon for which Plaintiff was receiving physical therapy was in his right middle finger. (*Id.*). Defendant recommended that Plaintiff continue with physical therapy, and noted that he would "confer with physical therapist regarding prognosis and probability of return of extensor function of third digit of right hand." (*Id.* at 7).

From February 9, 2017 through March 8, 2017, Plaintiff continued to have regular physical therapy sessions, and to take Tramadol and Naprosyn for his pain. (*Id.* at 5-7). He again generally complained about lack of improvement. (*Id.*). Following Plaintiff's March 8, 2017 physical therapy session, during which Plaintiff stated that something still was not right with hand, the physical therapist discharged Plaintiff from physical therapy based on the lack of significant change or improvement, and sent an email to the nurse practitioner and medical doctor (presumably Defendant), recommending that Plaintiff be seen again and possibly referred "to hand specialist/ortho MD." (*Id.* at 5). On March 21, 2017, Plaintiff was seen by a nurse, who submitted a consult for him to be seen by an orthopedist. (*Id.* at 4-5).

On April 26, 2017, Plaintiff was seen at an orthopedic practice. (*Id.* at 4). An office note signed by Dr. Thomas Otter stated that x-rays taken that day showed that the finger had been fractured but that the "fracture is healed nicely on our x-ray so that is not a clinical problem at this point in time," that Plaintiff was "suffering from scar tissue in the volar aspect of the finger," which "prevents full active range of motion of the finger," and concluded that "continued exercises are the best regime to try to rehabilitate the hand." (*Id.* at 38). On May 2, 2017, Plaintiff had a follow up visit with the nurse at SCI, at which

she noted that the plan of care was to continue to use his finger as much as possible and continue with exercises. (*Id.* at 3).

Defendant now seeks summary judgment on Plaintiff's deliberate indifference claim.

## LEGAL STANDARD

Rule 56(c) requires the court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). The burden then shifts to the nonmoving party to show that there is a "genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

> Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat

5

> an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotations, and alterations omitted).

## DISCUSSION

Defendant moves for summary judgment, arguing that there are no genuine issues of material fact, given that Plaintiff's deliberate indifference claim merely challenges the adequacy of the care he indisputably received from Defendant on the grounds that it was different than the treatment Plaintiff would have selected. In response, Plaintiff argues that the record evinces genuine issues of material fact that Defendant was deliberately indifferent by: (1) taking a conservative approach to his treatment that was "so inappropriate for a fractured finger" (D.I. 59 at 2-3) (cleaned up), and (2) delaying referral to an orthopedist, which caused permanent damage to his finger (*id.* at 3).

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prisoner has no right to choose a specific form of medical treatment. *Lasko v. Watts*, 373 F. App'x

6

196, 203 (3d Cir. 2010) (citing *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)). "Mere disagreement as to the proper medical treatment is also insufficient" to state a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (cleaned up). Treatment is presumed to be proper. [A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 103-05. "Unlike the deliberate indifference prong of an adequacy of care claim (which involves both an objective and subjective inquiry), the deliberate indifference prong of a delay or denial of medical treatment claim involves only one subjective inquiry—since there is no presumption that the defendant acted properly, it lacks the objective, propriety of medical treatment, prong of an adequacy of care claim." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017). Thus, rather than requiring extrinsic proof to establish deliberate indifference based on a delay or denial of medical treatment, "[a]ll that is needed is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors." *Id.*

The following is undisputed—Defendant saw Plaintiff for his finger on just two occasions, evaluated his injury based on x-rays and physical examinations, and prescribed him medication for his pain and physical therapy. Given these basic facts, clearly demonstrating the provision of care by Defendant, Plaintiff has a nearly insurmountable task staving off summary judgment.[5] Indeed, Defendant correctly

---

[5] There is some confusion regarding Defendant's note following their second encounter. (D.I. 26 at 7). It references numbness in the left middle finger and a tendon tear in the

7

asserts, "The *only medical evidence* in this case indicates that the care rendered to Mr. Dorman was reasonable based on his presentation and the objective findings that were present." (D.I. 56 at 13) (emphasis in original).

To support his claim, Plaintiff references two pieces of evidence from the record. The first is Dr. Ellis's October 18, 2016 note ordering an x-ray to rule out a fracture. The second is the April 26, 2017 orthopedic note, which stated that x-rays taken that day showed that the finger had been fractured and that, despite the fracture healing nicely, Plaintiff was suffering from "scar tissue in the volar aspect of the finger," which was "prevent[ing] full active range of motion of the finger."

With regard to the October 18, 2016 note from Dr. Ellis, Plaintiff appears to be under the impression that Dr. Ellis diagnosed a fracture, which contradicted the opinion of Defendant (and the non-defendant medical doctor who authored the radiology report following the October 26, 2016 x-ray) that there was no fracture. Even if Dr. Ellis had diagnosed a fracture, rather than just calling for an x-ray to rule out a fracture (as the record indicates he did), this would not constitute a genuine issue of material fact as it would be insufficient to establish a deliberate indifference claim against Defendant. *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("If a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a *doctor* disagrees with the professional judgment of

---

right middle finger. This appears to be a record-keeping mistake, since there is no indication that Plaintiff had a right middle finger injury. This mistake falls well short of what is necessary to establish a deliberate indifference claim. *See Spruill*, 372 F.3d at 235 ("Allegations of medical malpractice are not sufficient to establish a Constitutional violation."). The same is true of Defendant's apparent failure to enter the medical orders for the pain medication he prescribed after their first encounter, resulting in a week-long delay.

8

another doctor. There may, for example, be several acceptable ways to treat an illness."); *see also Hairston v. Dir. Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. Apr. 16, 2014) (per curiam) ("No claim of deliberate indifference is made out where a significant level of care has been provided, and all that is shown is . . . that a different physician has in the past taken a different approach to the prisoner's treatment").

Plaintiff's argument that the April 26, 2017 orthopedic note creates a genuine issue of material fact regarding a delay in treatment is also mistaken. This is simply another attempt at claiming that Defendant provided inadequate care by not diagnosing a fracture. *See, e.g., Pearson*, 850 F.3d at 538-39 ("[W]hile Pearson claims that Nurse Thomas delayed or denied him medical care, it is undisputed that she examined him, diagnosed him with a pulled muscle, and decided not to elevate his condition based on her opinion that it was not severe. Thus, his claim against her is one that she inadequately diagnosed and treated his medical condition."). Rather than "the surrounding circumstances" being such that a reasonable jury could find that "non-medical factors" were responsible for the purported delay in referring Plaintiff to an orthopedist," *see id.* at 537, the record, including the conclusion in the radiology report that there was no fracture, the rigorous course of physical therapy, and the prescription of stronger medication for the pain, demonstrate that Defendant was exercising his professional judgment in assessing the injury and providing care.

The Third Circuit has instructed that, "because the deliberate indifference standard 'affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients,' [courts] must 'disavow any attempt to second-guess the propriety or adequacy of [their] particular course of treatment' so long as it 'remains a question of sound professional judgment.'" *Id.* at 538

9

(quoting *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (second alteration in original). On this record, second guessing Defendant's professional judgment would be wholly improper.

Accordingly, no reasonable jury could find that Defendant was deliberately indifferent to Plaintiff's serious medical needs in providing treatment or by reason of an intentional delay or denial of medical care on the claims raised under 42 U.S.C. § 1983.

Plaintiff's amended complaint does not raise a medical negligence claim under Delaware law. Nor could it. Such a claim is governed by the Delaware Health Care Negligence Insurance and Litigation Act. 18 Del. C. §§ 6801-6865. When a party alleges medical negligence, Delaware law requires the party to produce an affidavit of merit with expert medical testimony detailing: (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury. *Bonesmo v. Nemours Foundation*, 253 F. Supp. 2d 801, 804 (D. Del. 2003); 18 Del. C.§ 6853. Plaintiff did not submit an affidavit of merit signed by an expert witness at the time he filed his Complaint. *See* 18 Del. C. § 6853(a)(1). Therefore, the possibility of such claim raises no bar to granting Defendant's motion.

## CONCLUSION

For the above reasons, the Court will grant Defendant's motion for summary judgment.

An appropriate Order will be entered.